**F. E. MYERS & BROTHER CO. v. GOULDS PUMPS, Inc.**

**Civ. A. No. 2625.**

United States District Court
W. D. New York.
May 31, 1950.

See also D.C., 7 F.R.D. 416.

Toulmin & Toulmin, Dayton, Ohio (H. A. Toulmin, Jr., Clayton E. Crafts, Herbert H. Brown, all of Dayton, Ohio, and John S. Powers, Buffalo, N. Y., of counsel), for plaintiff.

Winslow E. Thomson, Rochester, N. Y. (Edwin T. Bean, of Buffalo, N. Y., of counsel), for defendant.

478

KNIGHT, Chief Judge.

This is an action originally brought for a Declaratory Judgment adjudging certain patents owned by the defendant invalid and not infringed by the plaintiff. The Complaint charges unfair competition and asks for an injunction and damages, but the charge has been dismissed. The defendant herein joins issue by alleging the patent valid and counterclaiming alleges infringement by plaintiff of certain claims in defendant's patents.

The patents in suit are Patent No. 2,257,-507 (hereinafter called Patent No. 507), filed March 27, 1940, and issued on September 30, 1941, and Patent No. 2,375,571 (hereinafter called Patent No. 571), filed September 5, 1941, and issued on May 5, 1945, both to John Mann and assigned to the defendant; and Patent No. 2,235,109 (hereinafter called Patent No. 109), filed June 2, 1942, and issued on November 23, 1943, to one Conery, and assigned to this plaintiff.

The defendant on the trial limited its infringement charges to Claims 6, 8, 9, 24, 25, 26 and 27 of Patent No. 507 and Claims 2 and 3 of Patent No. 571. All these patents relate to domestic water pump systems.

Each of the parties herein has been long established; is well known as an extensive manufacturer of pumps for domestic and commercial use. They are competitors and for a number of years last past have manufactured and sold a pump, of comparatively recent origin, known as the "jet-centrifugal pump". From the simple hand pump and windmill pump there has been much development in the pump art. They were followed by the so-called displacement pump, piston pump, centrifugal, rotary and other types to the present jet-centrifugal pump. The plaintiff presently manufactures a pump called the "Ejecto" and the defendant presently manufactures what it calls the "Jet-O-Matic" pump for shallow and deep well and what it calls the "Balanced Flow" pump for shallow wells.

The trial of this suit consumed nearly four weeks. This does not include the time used in taking depositions out of court and the days employed in making numerous pump tests. Consideration of the case by the Court has necessitated the reading of 3000 pages of testimony, the examination of 484 physical exhibits, scores of drawings, catalogues and many other documents; reference to many of more than 250 citations of authorities, examination of many alleged anticipating and prior art patents, thirty-seven claims in the patents in suit, and last, but not by any means the least of the task of the Court, a study of 700 pages of printed briefs. The great length to which some of the briefs have extended show much repetition and this has tended to much confusion.

We are here concerned with a greatly crowded art. It is apparent, and it is not denied, that many of the elements in the Mann patents aforesaid are old in the art. The use of jet pumps is old, as is the centrifugal pump, but the combination of the two found its origin in comparably recent years. Defendant claims that "Mann invented a new and patentable combination by which a new and useful result was obtained in a new way". Plaintiff asserts that Mann has only an aggregation of old parts, performing no new or different function than was shown in the earlier art.

In the last decade the courts have been held to strict rules in the determination of patentability. The law is now well established that "the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58, decided in 1941. A combination of old elements must demonstrate a new and useful use. Marconi Wireless Co. v. United States, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731; Lincoln Eng. Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Westinghouse Air Brake Co. v. Schwartz Electric Co., 6 Cir., 108 F.2d 352; Trico Products Corp. v. APCO-Mossberg Corp., 1 Cir., 45 F.2d 594. What would readily occur to one acquainted with the prior art and skilled in that art involves mere mechanical skill. Mechanical skill is but the display of expected skill

which would readily occur to one acquainted with prior art and skilled therein, and involves only the exercise of ordinary faculties and reasoning aided by special knowledge and facility of manipulation which is acquired through habitual and intelligent practice of the art.

The specifications of a patent are addressed primarily to persons "skilled in the art", by which is meant, not those having very great technical knowledge relating to the subject-matter of the invention, but rather those having ordinary and fair information; and if to these latter the specifications sufficiently describe the invention or process, it is all that is required. Vol. 39, Words and Phrases, Perm.Ed., p. 359. Tannage Patent Co. v. Zahn, C.C., 66 F. 986.

"Although every element of a patent combination is old, invention still exists if the combination either produces a new and useful result, or effects an old result in a new and materially better way." N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co., 6 Cir., 25 F.2d 659, 663. Novelty is not impeached by the fact that like results may be accomplished in another way. Eibel Process Co. v. Minn. & Ont. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805.

The issuance of the patent is prima facie evidence of validity and the burden rests on one contesting to overcome such presumption by clear and satisfactory proof. Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970; Radio Corp. of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; Bianchi v. Barili, 9 Cir., 168 F.2d 793; 3 Walker on Patents, (Deller's Ed.) p. 2009.

This presumption is stronger where the alleged prior art of the alleged anticipating patent was considered in the Patent Office. Mohr & Son v. Alliance Securities Co., 9 Cir., 14 F.2d 799; Stevens v. Carl Schmid, Inc., 2 Cir., 73 F.2d 54; Ensign

Carburetor Co. v. Zenith-Detroit Corp., 2 Cir., 36 F.2d 684.

In the instant case, the Patent Office Examiner made an exhaustive examination of numerous patents, and among these are the principal patents now put forth as anticipating or as in the prior art. Such principal patents are: Lauchenauer No. 1,855,061; Horvath No. 2,196,453; Maffie-Schwartzkopff (German Patent) No. 494,877; Jacuzzi No. 2,205,121; Carpenter No. 2,203,077; Smith No. 1,791,292; and Conery (plaintiff's patent) No. 2,077,213.

Commercial success may "make weight in support of a patent". Warner Bros. Co. v. American Lady Corset Co., 2 Cir., 136 F.2d 93, 95. It does not, however, take the place of invention. The defendant has had great commercial success in the Mann Patent No. 507 invention. It is not claimed that this fact was proof of invention. It was offered to show the patent was not a mere paper patent without utility. Electric Machinery Co. v. General Electric Co., D.C., 13 F.Supp. 940, Id., 2 Cir., 88 F.2d 11; Eibel Process Co. v. Minn. & Ont. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Lincoln Stores, Inc. v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154; Walker on Patents (Deller's Ed.) Vol. 1, p. 234. 35,000 of the Goulds pumps were sold in a six months' period.

It is true that, in cases where the question of patentable invention is a close one, such success has weight in tipping the scales of judgment toward patentability. Jungerson v. Baden Co., 2 Cir., 166 F.2d 807; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Walker on Patents (Deller's Ed. 1937) Vol. 1, Sec. 44.

Obviously the device must be useful. A function or mode of operation is not patentable. It is the structure, the substantive thing, that produces the result. A claim for the function of the invention is void. Trico Products Corp. v. Apco-Mossberg Co., 1 Cir., 45 F.2d 594; Westinghouse v. Boyden Power Brake Co., 170 U.S.

537, 18 S.Ct. 707, 42 L.Ed. 1136; Walker on Patents (6th Ed.) Vol. 1, sec. 162 b.

■ "Anticipation results only when all the elements of the combination or their mechanical equivalence are found." Union Simplex Train Control v. Gen. Ry. Signal Co., D.C., 11 F.Supp. 854, 859; Id., 2 Cir., 91 F.2d 950.

Now the prior art admittedly shows jet centrifugal pump systems. It is undoubtedly true that the device which most fully separates the air or gas from the water to prevent its re-circulation through the system is better than the one which does this to a lesser extent. It makes for greater efficiency and economy in operation. The problem of the removal of air and gas from the water in the operation of the jet centrifugal pump is one which has long been recognized and sought to be answered. Air or gas in the system adversely affects the efficiency of operation. This is disclosed in various patents. In some wells more air is drawn in than others, and this is the same with gas. It appears that percent of air or of gas in the water may run as high as 10%.

■ A new combination which increases efficiency strongly indicates the presence of invention. Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303; Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017; Eibel Process Co. v. Minn. & Ont. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

Does Mann disclose a combination of elements which produce a "new and useful result or effect an old result in a material way" and does he "reveal a flash of creative genius, not merly the skill of the calling"? These are some of the questions to be answered by the Court. There are numerous other questions to be considered.

The great number of patents on pumps lead the plaintiff to urge that the art in this connection has been exhausted. However, the situation with respect to these is well put by one of the plaintiff's witnesses, as follows: "The development of the jet pump industry has been phenomenal. Even today we are making some very expensive patterns which are already obsolete in my own mind. I mention that to show you what a broad field the jet pump industry is. As fast as worthwhile improvements are found it is customary to put them into use. It is not because the old pumps were unsatisfactory, but because the new ones are thought to be more satisfactory."

It is said that the water jet pump was first in use as early as 1852, and the theory of a pump operated by jet action was developed by Rankine in 1870. As late as 1934 there had been little development in the use of the jet pump for pumping water wells. As was said by Gosline and O'Brien, in the University of California Press (1934) Publications in Engineering: "The Water Jet Pump": "In the field of pumping machinery, industrial and economic influences generally have played a large part. Consequently ruggedness, availability, and suitability for a given purpose have been the major points of discussion. This process has yielded a large number and variety of acceptable pumps and there is no occasion to find fault with it. It would be unfortunate, however, if the subtler questions of maximum efficiency, principles of operation and design, and possibility of improvement were neglected. Some forms of pumps have been exhaustively studied both practically and theoretically; others have been neglected."

Recent technical articles on jet pumps indicate that invention has not run its limit as respects these. A few of such articles disclosed by the record are these:

Hydraulics and Its Applications,
Gibson, 1925
Physics for Technical Students in Colleges and Universities,
Anderson, 1937
Steam Power Plant, Auxiliaries and Accessories,
Croft, 1946
Centrifugal and Axial Flow Pumps,
Stepanoff, 1948
Naval Machinery, U. S. Naval Institutes

Sept. 30, 1941.　　　　**J. MANN**　　　　**2,257,507**

PUMPING APPARATUS

Filed March 28, 1940　　　　2 Sheets—Sheet 1

Fig. 7

Fig. 1

Fig. 4

Fig. 6

Fig. 5

INVENTOR.

John Mann

BY

Cumpston & Shepard

his ATTORNEYS.

Sept. 30, 1941.          J. MANN          2,257,507

PUMPING APPARATUS

Filed March 28, 1940          2 Sheets—Sheet 2

*Fig. 3*

*Fig 2*

INVENTOR.
*John Mann*

BY  *Cumpston & Shepard*
*his* ATTORNEY*S*.

May 8, 1945.                    J. MANN                    2,375,571

PUMPING APPARATUS

Filed Sept. 5, 1941            2 Sheets—Sheet 1

*Fig.1*

*Fig.2*

INVENTOR.

John Mann

BY

~his ATTORNEY.

Fig. 3

Fig. 5

Fig. 6

Fig. 4

INVENTOR.

John Mann

BY

Winslow E. Thurston

his ATTORNEY.

The above drawings show Figs. 1, 2 and 3 of the Mann Patent No. 507, and Figs. 1, 2, 3, and 4 of the Mann Patent No. 571. Each shows a shallow and a deep well construction. Generally speaking, a shallow well is one of a draw down depth of 34 feet or less from well to pump, but a depth of upwards of 24 feet cannot be relied on, and a deep well is one of greater depth.

Fig. 3 of the drawing of the Patent No. 507 shows a centrifugal pump (18), an impeller or rotor (26) with a plurality of vanes or volutes (32, 34, 36 and 39) mounted on a shaft (51) connected with a motor (52). Adjacent to the periphery of the pump are outlets, or channels (34) formed partly by guide vanes or walls (36 and 37) which serve as volutes and to convert velocity energy into pressure energy; a composite air separating chamber, made up of the chambers (41, 14, and 58) and having a pipe (56) extending upwards in the chamber (14), an automatic pressure control valve (79) in the chamber (14) to activate the jet, whether or not there be pressure in the tank, a tapped opening (111) for manual priming of the pump, a pipe (81) connecting the air separating chamber with the pneumatic tank (12) shown in Fig. 1.

This tank is hermetically sealed air tight with a draw off for service (83). Fig. 1 shows a float (84) which, when the level of the water in the pneumatic tank rises, opens the valve (89) to atmosphere. Air may be drawn in thru the pipe (91) connected in the suction side of the centrifugal pump. Fig. 3 shows an opening (57), with sealing means against leakage, through which the chamber (14) at its lower end communicates with the passage (58) which in turn communicates with the nozzle (60) of the jet pump which discharges through the diffuser (63) into the chamber (66), then into the suction inlet of the pump (28). The inlet chamber (62) Fig. 2, through an opening in the casing (11), communicates with the pipe (15), which communicates with the pipe (16) from the well, (71) is a check valve (a foot valve may be also employed) and (78) is a strainer in the well pipe. Fig. 1 shows a pressure switch (82) connected to the pneumatic tank.

Generally describing the operation of the Mann shallow well pump No. 507, it is this: The pump is manually filled with water through the opening (111) up to the top of the air separating chamber. This fills all parts below. The motor is started, the drive shaft is set in motion, and the water at high speed is propelled through the pump and discharge outlets, through the guide vanes into the chamber (41) wherein velocity energy is converted into pressure energy; thence up through the standing pipe in the air separating chamber, where the water with air flows out the valve opening at the top of the air separating chamber and thence to the pressure tank and out to use, while the substantially air free water flows down to the nozzle and diffuser where it meets up with the water drawn up by suction from the well and combined flow to the centrifugal pump. The operation then continues on as before. The electric switch control stops when the maximum predetermined pressure in the pneumatic tank (say 40 pounds) is reached and starting when a predetermined minimum (say 20 pounds) is reached. It is necessary that the pneumatic tank be properly charged with air at all times else the pump will become water logged. This pump is convertible into a deep well pump.

Figs. 1, 4, 5, 6 and 7 of Patent No. 507 show various elements of the deep well pump. In converting from a shallow well to a deep well pump, the plug (67) is removed and through the opening the nozzle (60) and the diffuser are taken out. A plug is inserted at (126), Fig. 4, separating the chambers (58) and (62). The pipe (136) (pressure pipe) through the opening (67) is connected at its upper end with the casing, and a jet (127) is secured in the well at the end of the suction pipe, with the diffuser (128) extending upwards in the suction pipe (136). A foot valve (133) is placed in the tail piece. The water flows from the air separating chamber into chamber (58), down pipe (136) through the jet and diffuser in the well, up the well pipe

(129) and the pipe (a jet pump body (127) is secured in the well to the end of the suction pipe with the diffuser (128) thereof extending upwards into the suction well (129).

Patent No. 571 shows some different arrangement of parts from Patent No. 507. The air separating chamber is a single chamber and not a composite chamber. The patentee states that the air separating chamber (28) "is intended to serve essentially the same function as the double air separating chamber shown and described in my above mentioned copending applications", (Patent No. 507). The centrifugal pump discharges through outlets in the pump casing to the air separating chamber and part of the water flows out for use and part, substantially air free, flows to the nozzle and together with the water drawn by suction from the well to the centrifugal pump.

The essential features of this patent are "the novel arrangement of the parts for converting the pump from shallow to deep well in the minimum time and with the minimum effort and the arrangement of the nozzle and diffuser to insure axial alignment of these parts." This alleged novel arrangement is such that upon the removal of bolts in the pump casing, the casting (27) which contains the air separating chamber (28), together with the nozzle (33) and the diffuser (34) are removed as a unit. A second casting (58) is employed in place of the casting (27). The nozzle and diffuser are then located in the well as in Patent No. 507. The casting in which the nozzle and diffuser are mounted is a rigid assembly. It is accurately bored for the reception of the nozzle. Axial alignment of the diffuser with the eye of the impeller is assured. The assembly of the nozzle (27) and nozzle and diffuser are removed from the basic pump unit without disturbing the discharge pipe.

In this Patent No. 571 the centrifugal pump is mounted in a position where its axis of rotation is horizontal rather than vertical. Standing alone this is not invention. Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 63 S.Ct. 1398, 87 L.Ed. 1731; Dow Chemical Co. v. Halliburton, 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973. See Lung Patent No. 2,274,987 and Da. Col. Patent No. 2,272,906, and Carpenter Patent No. 2,203,077.

The discharge is from the impeller through 2 volutes into the air separating chamber. In this chamber the water divides, the part with air going up and out through an opening (29) and a pipe assembly (31) to the pneumatic tank and the air free water going down joins the water from the well in the suction chamber (37) and combined continues as in No. 507. Thus recirculation is effected.

It is not necessary to give any description of all of the patents in evidence and the structures shown in the numerous catalogues and drawings in evidence. It is specially necessary to carefully examine the patents considered on the Mann applications in the Patent Office, and various others cited.

April 19, 1932.     H. LAUCHENAUER     1,855,061

CENTRIFUGAL PUMP INSTALLATION COMPRISING AN AIR SEPARATING DEVICE

Filed Jan. 6, 1931     2 Sheets—Sheet 1

*Fig.1*

Inventor:

Hermann Lauchenauer,

By Henry Orth Jr
atty.

488

Fig.2

Fig.3

Inventor:
Hermann Lauchenauer,
By Henry Orth
atty.

The patent to Hermann Lauchenauer, of Zurich, Switzerland, was filed in the United States Patent Office January 6, 1931, and issued April 19, 1932. It had been filed on January 14, 1930, in Switzerland. This patent was assigned to the so-called Sihl Company, and the patent is referred to as the Lauchenauer-Sihl patent. Its principal use seems to have been for pumping waste water and excrement. Only one of these pumps was ever sold in the United States. This pump is one of the plaintiff's main references.

In Fig. 1 is found a centrifugal pump (1), connected through a pressure connection to an air separating chamber (3), situated above the pump, by pipe (2). The air chamber at its lower end connects with the nozzle (3a) of an injector II, which at (5) connects with the pressure conduit (6) in which is found the non-return valve (7) and a vent or snuffle valve. A lateral pipe connection (8) connects the suction chamber (4) with a second nozzle (9) of an ejector (I), which connects with the pump (1). The well pipe (12) through the knee bend (13) connects through the pipe (11) with ejector (I). An air inlet valve (13a) is located at the top of the knee bend.

The patentee says: "Alternatively, the air-separator 3 may be omitted and in its place an air pressure-equalizing device, in the form of a vent valve, inserted in the pressure conduit, or else the air-separator may directly be provided with a vent valve."

The latter form of structure is shown in Fig. 2, and the parts of the valve structure (21) are shown in Fig. 3. Fig. 2 shows an air separating chamber directly over pump (P); a pipe (R) leading out of that chamber to the pressure pipe (T); one ejector (S11), in the pipe leading from the chamber (3) to the pressure pipe (T), and ejector (S1) in the pipe leading from the pump. In Fig. 2 the location of two jets is changed, and the method of the circulation of the water differs from that in Fig. 1. Fig. 2 shows no non-return valve and no vent or snuffle valve but instead the valve (21).

In operation the pump Fig. 1 is manually filled. When the pump is being started, water is drawn by suction from the well through the knee joint joining up with water flowing from jet (1) to the centrifugal pump, thence through pipe (3) to the air separating chamber and down through nozzle (3a) and ejector (4) where the water divides with part going down the pipe (5) and part up and out the pressure pump, going through the pipe (8) and on the nozzle (9) and to the ejector (I) and back to the pump, thus completing the circuit. Both pumps show the knee bend. The vent valve (13 a) is a siphon breaker and when the motor stops this valve opens to admit air to the knee bend and when the motor is started this valve closes.

It is claimed that patentee's method of preventing the siphoning out of the water in the pump is through the cooperation of the so-called snuffle valve (7) and the siphon breaker (13a). This combination is claimed to be the equivalent of 79 of Mann No. 507. This seems not the fact. In combination Mann prevents water from running back while Lauchenauer does the reverse. The patentee Lauchenauer shows no element comparable to the element 79 in Mann No. 507. Though the pump may be convertible, the patentee makes no claim that it is. Lauchenauer has no pipe the equivalent to the pipe (56) in Mann No. 507 and no foot valve but has what he terms a circulating ring to air through pump tank and 2 jets. Mann shows no knee bend. Lauchenauer claims that after the pump has been primed the ejector (SI) becomes inactive. The patentee claims that after priming all the water flows from the air separating tank directly through S to pressure pipe. But it is not seen how this action could take place. It appears that part of the water must return through ejector (SI) after priming, and there is proof to that effect. While Lauchenauer is one of the chief references of the plaintiff as anticipating, his patent was thoroughly considered in the Patent Office, and the differences pointed out there and in this record plainly disclose it is not an anticipating patent, though it discloses elements in the prior art the equivalent of certain of those in the Mann patents.

The British Patent to Schmid, No. 382,-592, accepted October 27, 1932, also owned

by Sihl, is for a deep well operation. This is an adaption of the Lauchenauer pump ideas. The patent drawing shows a centrifugal pump and a high pressure pump driven by a common motor. A pressure pipe from the centrifugal pump communicates with the air separation tank while the high pressure pump connects with the suction pipe. An ejector is placed in the well and the nozzle of this ejector is connected with the pressure pipe. The suction pipe is connected with another ejector. Still another ejector is placed at the juncture of the pipe in what is called a pressure conduit. An air valve is located in the knee bend of one of the pipes extending into the well and a vent valve is placed at the topmost point of the other conduit pipe. A pipe connects the high pressure pump and the chamber. In operation the high pressure pump forces the water from the chamber down one pipe into the well and the ejector in the well forces the water from the well and the water in the other conduit pipe to the centrifugal pump from whence it is driven back to the air separating chamber. The drawings show no pneumatic tank, nor do the claims speak of one, but the specifications do speak of a second tank as a supply reservoir for the high pressure pump. Plaintiff claims that this chamber acts as a pneumatic tank, but this claim seems untenable. This British Patent is for a deep well system. It can be adapted to shallow well use, but there are no means indicated in the patent for converting.

Jacuzzi has two patents, No. 2,205,121, filed July 12, 1937, issued June 18, 1940, and No. 2,150,799, filed October 28, 1936, and issued March 14, 1939. The first mentioned patent was considered on the Mann application for No. 507. Much testimony was taken herein with respect to these two patents. Patent No. 2,205,121 is placed first in plaintiff's chart of claims and the chart purports to show that most of the material elements in the Mann devices are found in this Jacuzzi patent. The patent discloses a centrifugal pump with ejector pumps; the container or separator with a cavity "at least as large as liquid capacity of the pump"; a tank in which the pump

liquid is stored under the pressure of air in which is a float control air valve connected to a valve in the well tank; a pressure control electric switch tapped into the pump discharge pipe and connected by wires to the motor to provide "motor and pump operation in accordance with the pressure in the distributing system"; connection from the top discharge pipe to the tank and meter connected with the suction chamber of the ejector structure, the container being connected with the suction chamber of an ejector and intake pipe extending upwards through the base member having a check valve at the intake of the reservoir.

In starting, the pump is filled to a point near the top of the so-called air separating tank. This is done by pouring the water in through the pet cock at the top of that chamber. By action of the impeller, the water is discharged into a cavity; the stream divides and part flows to the pneumatic tank and part through the nozzle and diffuser.

It seems to this court that while different parts of this Jacuzzi patent find their equivalents in Mann, the operation of Mann differs and different parts perform different functions. One particular distinction is the so-called air separating chamber (89). Jacuzzi's chamber serves simply as a storage tank for priming. There is no air outlet at the bottom. There is no continuous flow of all the liquid through the chamber (89). The inlet and the outlet from the air chamber are not remote from each other. The valve (30) and the valves (55) and (56) find no equivalents in Mann. There is no connection between the so-called air separating chamber and the pneumatic tank.

Aside from one (Patent No. 121) being for a shallow and the other (Patent No. 799) for a deep well pump, the principal difference between these lies in the so-called multiple stage pressure pump, and the adaptation to the shallow or deep well. The plaintiff points to a clause in the description of Patent No. 2,205,121 as showing convertibility "as in the earlier Patent No. 2,150,799." That clause (p. col. 1, lines 36–39) reads: "the injector pump of

the unit may be rendered inoperative by substituting a plug for the injector nozzle 44". This clause does not describe convertibility.

March 14, 1939.  F. JACUZZI  2,150,799

PUMPING APPARATUS

Filed Oct. 28, 1936  3 Sheets—Sheet 1

*Fig.1*

INVENTOR.
FRANK JACUZZI.
BY Henry N. Young
ATTORNEY

_Fig.1_

_Fig.2_

_Fig.3_

INVENTOR.
CANDIDO JACUZZI
BY Henry N. Young
ATTORNEY

The Horvath Patent No. 2,196,453 jet pump, filed December 22, 1937, issued April 9, 1940, as the patentee states, is for a "motor driven reciprocating type". This patent discloses two different pumps. Each is for a deep well. One is for a well from 20 to 50 feet and the other preferably for a depth upwards of 50 feet. Each discloses a jet in a single well pipe. Each is different in its operation. The removal of air is not mentioned, and it seems that air is no problem in this piston type of pump. On each of the plaintiff's drawings of the Horvath patent, the plaintiff designates an unnumbered part of the patent as an air separating chamber. The so-called "priming and suction" chamber does not function like Mann, and it discloses no method for separating air and water. Neither is an air separating chamber. These are stated by the defendant as surge chambers peculiar to this type of pump. This is evidently so from an examination of an exhibit of a reciprocating type of pump in evidence. It is definite that neither of these parts is comparable to the air separating chamber in Mann or to its operation.

One figure of Horvath's shows a "second air separating chamber" but no pneumatic tank. The other figure shows a pneumatic tank with no "second air separating chamber". In the one pump the water divides in the so-called delivery pipe, part going out of the service line and part going "through the jet supply to the conduit formed between the suction line and the well casing" and then recirculating through the pump. In the other pump the water divides in the delivery pipe going to the tank, part going into the tank and out for house service and the other part goes down from the suction line from the well and recirculates through the pump. It will be seen that this method of circulation and recirculation is not shown in Mann. Obviously nothing is said about conversion.

The Maffie-Schwartzkopff foreign patent, filed in 1929 and issued on March 13, 1930, No. 494,877, and known herein as the German patent, while it has, as it states, a suction inlet, a suction chamber, a pressure outlet, an impeller with vanes "with an elongated suction neck extension"; a nozzle within the pressure chamber, not only is the arrangement of the several parts not like Mann but the parts themselves perform different functions. This German patent shows no air volume control, and the patent says nothing about such control. It shows no check valve or siphon breaker, and it is not that the patent was intended to show a knee bend something on the type of Lauchenauer. Nothing is said about conversion, and there is no clear showing that it could be converted. What this German patent was particularly directed to was to provide "the impeller of the pump with an elongated suction neck which is constructed as a diffuser" to eliminate certain disadvantages in pumps where the ejector is in front of the inlet. This patent was considered in the Patent Office.

The Carpenter Patent No. 2,203,077 is for a shallow well pump, though it is convertible into a deep well pump. This patent was filed July 12, 1937, and issued June 4, 1940. This pump has features closely resembling the Mann Patent No. 507, but there are distinct and material differences in the elements. The experts definitely disagree as to the functions of different parts of these patents. The patentee says that he provides: "both a low pressure and a high pressure conduit." Describing the air separator, the patentee says: "any air sucked into the compartment from the suction pipe will be conveyed through the venturi into the priming chamber where it rises to the top to be released to the outlet pipe (51). However, if the high pressure discharge is desired, in which case the valve (53) will be closed, I provide an air duct (54) which preferably leads from the top of the priming chamber to the housing chamber, but in case the outlet conduit is connected with a pressure tank, then to prevent the back flow of liquid therethrough, I vent the air duct to atmosphere through an air relief valve (56) of any well known design * * * Figure 3." For low pressure discharge the conduit is connected with outlet of pump between pump and jet.

There is much confusion in the testimony as regards the location of any air separating chamber. Plaintiff's drawing of the Carpenter Patent Exhibit No. 280 designates two separate parts as two separating chambers, though the patent says nothing of any air separating chamber. One of these parts the patentee calls, as said, a "priming chamber", and the other a "discharge channel" formed in a valve housing. While pointing out two such chambers, plaintiff's brief speaks of one only. The part designated air separating chamber on the drawing Exhibit No. 280 in evidence (chamber 32 in the patent) is not an air separating chamber. The patentee calls it a "discharge channel." The patentee testified that it was never intended as an air separating chamber, and plaintiff's expert testified substantially the same thing. It is too small to serve as an air separator. Part 6 is an air separator, if there is any. The designated ways of removing air from the "priming chamber" find no comparable means in Mann. Carpenter's priming chamber is below the pump. Carpenter does not de-aerate in the way employed by Mann. He has no comparable composite chamber. The tests disclosed that Carpenter did not de-aerate well on re-circulation. Mann has no air duct or alternative air relief valve as shown and described in this patent and in Exhibit 280 in evidence. Chamber 6 in Carpenter is on suction side of centrifugal pump. Water with air coming into the chamber 6 would flow from chamber 6 through centrifugal pump impeller or venturi into chamber 32, or water would divide and part flow through pipe out to use and other part going to the jet pump. The patentee testified "this pump when operated for deep well purposes was not claimed to be self priming or particularly good at handling air." This patentee sought a license of defendant after issuance of patentee's patent, and after the construction of the "Advance" and "Easy Prime" pumps. The Patent Office examined this Carpenter in connection with numerous Mann claims. Carpenter does not anticipate.

A very considerable amount of testimony was taken with respect to Patent No. 1,-755,217, filed March 6, 1929, issued April 22, 1930, to one Jacobsen and owned by the Duriron Company, Incorporated. This is a heavy duty pump intended for industrial use. The patent discloses a separation chamber, mounted above the pump casing. In this separation chamber the water divides, part going to the discharge line and part to the priming system. The patent reads: "The liquid by-passes to the priming system and is re-circulated until the pump is primed." Nothing is said about re-circulation after priming. This chamber is not the equivalent of the Mann composite chamber. The patent neither shows, describes nor claims a jet pump in the usual meaning of the term. The evidence discloses a conflict in the plaintiff's testimony as to what is claimed to be a jet pump. The only parts which with any reason could be claimed to be a jet and diffuser are not the equivalent of the nozzle and diffuser in Mann. This patent shows a knee bend and siphon breaker, something after the style of Lauchenauer. There is no reference in Jacobsen to convertibility, nor is there any way disclosed how it could be converted. The Duriron Company never made a deep well pump and has never been employed in connection with domestic water system. The Jacobsen has never been used in connection with a pump storage tank for domestic water system and never employed with a pressure switch for automatically starting and stopping the motor. Comparatively few of the Jacobsen pumps were sold between July, 1930, and April, 1934.

LaBour No. 1,915,678, issued June 27, 1933, has no jet or pneumatic tank air volume pressure control. This has a so-called "separator" from which part of the "mixture" is carried out the main discharge throat and a portion thrown into the return channel. After priming only a small amount of water recirculates. Plaintiff's expert calls this a "rudimentary type jet pump." The patent specifically states that it is useful in removing gas. The Westco pump was made under this patent.

Saxe No. 2,061,521, issued November 17, 1936, has a centrifugal pump structure. It neither describes nor does it claim a jet pump. Plaintiff asserts that the elements

which the patent designates as an elbow pipe, in combination with the part designated as an outlet, constitutes a jet pump, but that evidently cannot be the fact. In this patent, as in others for centrifugal pump structures, when the pump is at full capacity, recirculation is entirely or substantially stopped. There is no mention of air separation in this patent.

Swiss Patent No. 175,107, issued February 15, 1935, has the same basic principle of structure and operation as Lauchenauer. It includes a knee bend and a recirculating system when originally primed only. It employs two jets and a float valve to prevent recirculation through the two jets.

Bradford Patent No. 1,830,923, lacks many elements which are essential in the operation of the Mann Patent No. 507. It has no jet pumps and no air separating chamber into which the pump discharges its entire output and no division of the water as in Mann. No pneumatic storage tank is disclosed. This is a siphon type of pump. When the water drops out of the suction pipe the pump is stopped as in the Lauchenauer type.

Barzen No. 2,174,960, application filed December 15, 1936, issued October 3, 1939, includes only two claims. This patent shows two pressure pumps of rotary type like other pumps hereinbefore mentioned in that the flexible tubing collapses when it got up to pressure. Defendant admits that only a small amount of flow to the jet would then take place. The method of circulation has no relation to that in Mann. The trapping of air is claimed as one of the purposes of the patent. The patent device is peculiar in that it employs a flexible, rubber, collapsable member when in a normal uncontracted state, as the patent states, it "will leave an annular space * * * around the neck * * * to permit by-passing of water through said space to impeller chamber." No jet pump is shown in this patent, or air separation chamber, to furnish air free water to the jet pump.

Mohr No. 1,549,786, issued in 1925, is a patent for a reciprocating type of pump.

This shows what might be called a pneumatic tank, and this has a valve for admission of air and a float, located in a box or shell to regulate the supply of air to the pump (2) according to whether the level of the water in the tank is above the proportionate rate as between air and water in the tank.

So-called German Patent No. 376,684, issued June 25, 1923, is termed a rotary pump. It is submitted as showing prior art. This was cited in connection with application of Mann No. 507. It does not show, specify or claim air separating chamber, but plaintiff claims that the part called by the patentee an "accumulator" is an air separating chamber. The patent says that the fluid separates in the "suction socket". Separation of air is not mentioned. It says the division of air is "so that the fluid pump may be used for different purposes."

In addition these patents have been received in evidence:

Patent No. 1,445,061, to Anderson, a vacuum heating system and automatic and safety control.

Patent No. 1,565,769 to Alexander, December 15, 1925, relates to means for maintaining an adequate supply of compressed air and water in the tank.

Patent No. 1,868,621, to Wolfe, issued July 26, 1932, ejector pumps for pumping oil wells which shows a jet and diffuser in the well.

Patent No. 2,066,505, to Wolfe, issued January 5, 1937, relates to means for excluding abrasive carrying liquid from bearings and joints.

Patent No. 2,109,679, to Neveling, issued March 1, 1938, relates to a sealing device for pumps.

Patent No. 2,133,487, to Spargo, issued October 18, 1938, relates to liquid sealed rotating joints.

Patent No. 2,258,495, to Jauch, issued October 7, 1941, relates to a liquid dispensing apparatus.

British Patent No. 154,082, issued to Wolfe, November 25, 1920, relates to

pumps of the centrifugal type or a type in which the system needs to be filled before suction action can be exerted. This shows no separation tank, no pneumatic tank or any air separation. ·

Patent No. 45,349, to Sigmund, October 10, 1933, relates to submerged pumps and particularly to the location of a compressor and its operation.

Swiss Patent No. 163,977, issued to Sihl, et al., filed June 1, 1932, published November 16, 1933, relates to means whereby the clogging of the ejector in the high pressure pump may be prevented.

It is not believed that any one of these last-named patents are of any significance here. True, some show parts or elements that may be comparable with parts in Mann, but none are used in a similar combination. It is only by a stretch of the imagination that the parts can be called equivalent.

The record discloses many catalogs issued by the parties and others, as well as many drawings purporting to be illustrative of many of these patents in evidence. These have been examined. Special attention has been directed to the catalogs and drawings of the so-called "Advance" pump, the "Easty Prime", the "Alpha", "Albe", the "Berkley" and Jacuzzi, all referred to by plaintiff as Pacific Coast Prior Uses and Prior Patents, and the numerous catalogs of the parties.

Though the devices of the two Mann patents may be patentable, the plaintiff claims they are invalid for various reasons.

■ Plaintiff asserts that the Mann Patent No. 507 has been abandoned. The undisputed evidence shows that Goulds discontinued making this pump between 1944 and 1946, but has, to the time of the commencement of this action, continued to supply parts for it. The action was commenced in 1945. "No abandonment of an invention after the issue of Letters Patent thereon has ever been judicially decided to exist in the United States." Walker on Patents (Deller's Ed.) Vol. I, Sec. 96, p. 368. And this right is not dependent on his using the device or affected by his

non-use thereof. (Continental Paper Bag Co. v. Eastern Paper Bag Co.) Paper Bag Patent Case, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122. If the public interest were affected, the rule might be different. Such can hardly be said to be the case here.

■ It is claimed that Mann "purloined" his ideas for his patent from Lauchenauer, and that this fraud denied his right to these Mann patented. Since Lauchenauer does not anticipate, this contention falls. Further, Mann did only what any individual seeking a patent might be expected to do—he procured information from Lauchenauer and obtained various jet centrifugal pumps, including a Jacuzzi, Fairbanks-Morse, Albe and Advance pumps.

■ Plaintiff claims that Claims 8 and 9 of Patent No. 507 are invalid because of misdescriptions and indefiniteness. The statute, R.S. § 4888, 35 U.S.C.A. § 33, requires the inventor to describe "in such full, clear, concise, and exact terms as to enable any person skilled in the art or science * * * to make, * * * the same". The claims of a patent are to be read in connection with the specification and drawings. The alleged defects are in the use of such terms as "to materially deplete", "substantially free air", "chamber being of sufficient size to slow down the velocity of the liquid", and "a large portion lies above the level of the pressure pump". "The language of the claim thus describes this most crucial element in the 'new' combination in terms of what it will do rather than in terms of its own physical characteristics or in its arrangement in the new combination apparatus." Claims 8 and 9 describe what they will do in terms of their own physical characteristics as well as the arrangement of the parts in the new combination. One skilled in the art would be able to construct the purported structure. The claims are neither misdescribed nor indefinite.

■ It is claimed that "interchangeability" cannot be made the basis of invention. A mere change in degree is not patentable, but when that is coupled with a new means by which the "degree" may be

changed it is. In view of my decision on the question of defendant's conversion, it is not necessary to pass on this question of law.

Plaintiff claims fraud in procuring the allowance of Claims 2 and 3 of Patent No. 571. This patent was applied for September 3, 1941, and Claim 2 was inserted by amendment January 10, 1944, and Claim 3 by amendment March, 1944. The Conery Patent was filed June 2, 1942, and issued November 23, 1943, as hereinbefore stated. Fraud is based on the claim that Mann did not advise the Patent Office that the Conery pump had been on the market and sold more than one year before the Claim 2 was offered in the Patent Office.

On October 17, 1942, Myers contracted to sell a pump of his patent to one McKee; on November 11, 1942, Myers contracted to sell these pumps to the Navy and on February 20, 1944, one pump was sold. There was no completed sale till January 18, 1943, when the McKee pump was delivered. There was no public sale or use more than one year prior to January 10, 1944. Defendant denies that it had any knowledge of any of these sales. Since only two of the pumps had been contracted for before 1944 and had not been completed, it can hardly be presumed that defendant did have knowledge. Defendant denies knowledge. The Patent Office was advised by Mann of the Conery application.

The rule of law is that "if the article is not on hand, ready for delivery, it cannot be said to be 'on sale.'" Connecticut Paper Products v. New York Paper Co., D.C., 39 F.Supp. 127, 133. "If patented articles are on hand ready to be delivered to any purchaser, they are on sale, whether any of them has been sold or not. But, if they are not, they cannot be said to be on sale within the meaning of the act, * * *." Burke Electric Co. v. Independent Pneumatic Tool Co., 2 Cir., 234 F. 93. "* * * but where a specimen of an invention is built or made to order, it is not 'on sale' till it is completed, delivered, and accepted." Walker on Patents, supra, sec. 85, p. 355. McCreery Engineering Co. v. Massachusetts Fan Co.,

1 Cir., 195 F. 498. It will be seen that Muncie Gear Works Co. v. Outboard Motor Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171, is not in point.

The original application in Patent No. 571 was filed September 5, 1941. Originally only Claim 1 was allowed, and as allowed it was limited to "a diffuser mounted adjacent to said suction opening with a discharge of the diffuser extending into said suction opening." Insofar as this Claim 1 is concerned, it is believed that it is valid. The claim of the plaintiff that this feature is old in the art, as shown by German Patent No. 494,877, cannot be supported. This German Patent states that the impeller of the pump is provided "with an elongated suction neck which is constructed as a diffuser" and further, "the impeller wheel has an elongated suction neck extension (11) constructed as a diffuser and which forms part of the ejector". Claim 2 was filed January 10, 1944, and Claim 3 on March 22, 1944. Claim 2 supplies an additional feature of having a unit detachable from the casing and carrying a nozzle and diffuser. Claim 3 differs from Claim 2 in that it includes the air separating chamber as "having a discharge connected for liquid in a fixed part of the system". It is claimed that the features which the defendant states are novel are shown in the Goulds pump illustrated in the catalog included in the file in the Patent Office in Patent No. 507. It does not seem that the Patent No. 507 shows any detachable casing, nor that Patent No. 507 specifically mentions the air separating chamber "as having the discharge in the fixed part of the system".

In reply to the plaintiff's claim that the defendant shifts the ground of his invention from the original subject claim to another phase of the invention not claimed or mentioned in his original patent here, defendant says that originally Claims 2, 3, and 5 of Patent No. 571 showed a pump for a shallow or deep well, a centrifugal pump and a jet pump, a removable cover part and an air separating chamber. Defendant asserts that Claims 2 and 3 in suit merely made a more accurate state-

ment of the invention as originally claimed. That seems so since the original drawings of Patent No. 571 show the removable cover part and the specifications describe it.

Claim 2 originally read: "said pressure pump having associated therewith a removable part, and a jet pump, comprising a jet and diffuser, supported in said removable part and removable therewith". Claim 3 originally read: "said pressure pump having associated therewith a removable part, and a jet pump, supported in said removable part". Claim 5 read: "said pressure pump having associated therewith a removable part, a chamber formed at least partly in said removable part and into which said pressure pump discharges, and a jet pump mounted in the well".

Most of the claims of the Patent No. 571 were originally rejected on Mann Patent No. 507 and Carpenter Patent No. 2,203,077. The patented Mann application, Serial No. 224,149, filed August 10, 1938, shows a combined tank and air separating chamber. This application was abandoned. Claims 8, 9 and 10 of Patent No. 507 in issue, originated in that application as original Claims 32, 33 and 40, of which 32 and 33 were inserted by amendment June 21, 1939, and Claim 40 was inserted by amendment dated November 2, 1939. It is not believed that the defendant has shifted the grounds of his invention from the original subject claim. The original subjects claimed in these Claims 2 and 3 are found in the patent application Serial No. 224,149.

It is asserted that Mann's Claims are invalid because functional at the exact point of invention. Plaintiff cites Halliburton Oil Well Co. v. Walker, 329 U.S. 1, 67 S. Ct. 6, 10, 91 L.Ed. 3, in which the court in part said: "The language of the claim thus describes this most crucial element in the 'new' combination in terms of what it will do rather than in terms of its own physical characteristics or its arrangement in the new combination apparatus. We have held that a claim with such a description of a product is invalid as a violation of Rev.Stat. 4888." The plaintiff quotes from typical Claim 9 and Claim 25 of Patent No. 507. Each of these claims contains statements of "physical characteristics" and or its arrangement in a "new combination apparatus". Sec. 4888, supra, reads: "In case of a machine, he (inventor) shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." The provisions of the act have been sufficiently met.

It is believed certain of the claims of the Mann Patent No. 507 are valid and that such validity lies in the structure of the so-called air separation chamber, as constituted by that chamber 41, the pipe 56, the air separating chamber 14 and the passage 58, acting in cooperation with the valve 79, purposed to prevent the air pressure in the chamber 14 from falling below a predetermined minimum, together with the inlet valve on the suction side of the centrifugal pump to properly charge the pneumatic tank and prevent water logging.

While, as stated, the record discloses numerous elements known in the prior art, none are shown as equivalent to the aforesaid combination. It, with other prior art and uses, combined to effect an elimination of substantially 100 percent of air on recirculation to the jet. Numerous tests were made of Mann Patent No. 507 and other pumps and none of the latter operated in air removal with the efficiency of this Mann Patent. From these tests or demonstrations the pump was operated without the air separating chamber and the pipe 56. The record discloses that the output of the pump, without the air separating chamber and the pipe 15, showed a reduction of 40 percent less than the output when the chamber and pipe were used. Further, the record discloses that without the air chamber there was a reduction in air handling capacity of 72 percent.

Other pumps tested operated continuously but none as efficiently as the Mann Pat-

ent No. 507. These tests showed that Mann accomplished a new result.

The Court said In re Holt, 162 F.2d 472, 475, 34 C.C.P.A., Patents, 1129;

"It is well settled that a combination of old elements which produces new, useful and unobvious results may involve invention and constitute patentable subject matter."

"Thus, a patent which is an improvement on an old machine may be very meritorious and entitled to liberal treatment."

"Where an invention undoubtedly marks a substantial advance in the art, the patent is to be given a reasonably liberal construction so as to secure to inventors the rewards to which they are entitled." Walker on Patents, (Deller's Ed.) Vol. 2, Sec. 247, p. 1212. Wire Tie Machine Co. v. Pacific Box Corp., 9 Cir., 102 F.2d 543; Page v. Myers, 9 Cir., 155 F.2d 57.

"And a substitution which involves a new mode of construction, or develops new uses and properties of the article formed, may amount to invention. * * * A patentable combination may be comprised of elements that are all old or all new, or partly old and partly new." Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154, 162. See also: Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

It is believed that the claims in Patent No. 507 insofar as they relate to convertibility are not valid. The prior art shows comparable methods of conversion from deep to shallow or shallow to deep well. Such are Berkley Easty Prime pump, designed in 1937 or 1938; the Advance pump of 1937; and the Jacuzzi No. 2,150,799. The method of conversion employed by defendant is no more than would come within the ken of one skilled in the art. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644;

Bergstein v. Lowman Folding Box Co., 2 Cir., 156 F.2d 609; Dow Chemical Co. v. Halliburton Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973.

As to the Mann Patent No. 571, Claim 1 is not in dispute. Claims 2 and 3 are valid. A novel feature of Claim 2 is the "unit detachable with respect to said pump casing without disturbing the pump casing." This unit is made up of the cover plate 27, jet 33 and diffuser 34.

Claim 3 differs from Claim 2 in that it shows an air separating chamber having a discharge in the fixed part of the system. This patent shows a horizontal impeller shaft. Such is found in Jacobsen, Bradford, Lauchenauer and Burke (supra).

The patent does not disclose the combined air separating chamber as shown in patent No. 507, and it shows no pressure control in the pressure tank. No element the equivalent of this detachable unit is found in any prior use or alleged anticipating patent. The reference patents, Berkley, Smith No. 1,791,292, Lauchenauer, Jacuzzi, British and Carpenter do not show an equivalent element.

The absence in the Patent No. 571 of a showing of an opening to permit the movement of water from the impeller to the pressure chamber does not make the patent invalid. The specifications read in part: "The chamber 28 is of sufficient size and capacity to appreciably slow down the velocity of the liquid discharged into it so as to permit liquid and air separation to take place therein." Certainly the disclosure in the patent is such that one skilled in the patent art would readily understand how to practice the invention.

It is said that Patent No. 507 is of doubtful operation because the arm 86 would not work, but it did work as is conclusively shown by the great number of sales and its wide use.

Nov. 23, 1943.  W. J. CONERY  2,335,109

COMBINATION CENTRIFUGAL EJECTOR PUMP

Filed June 2, 1942  3 Sheets—Sheet 1

Fig.1

Fig. 3

Fig.2

Inventor
William J. Conery

By Frease and Bishop
Attorneys

Fig.6

Fig.7

Fig.7a

Inventor
William J. Conery
By Frease and Bishop
Attorneys

Has plaintiff infringed?

This pump is generally designed to these purposes: to provide an efficient self-priming pump of simple construction, readily convertible, with impeller and diffusion vanes within a separation chamber, combined centrifugal ejector pump with impeller and motor rotating on a horizontal basis with an axially aligned jet, horizontal jet discharging water directly into the impeller and with all moving parts removable as a unit.

When initially started the chamber 14 is filled with water, the motor 20 is started and the impeller 28 starts circulating water and creating a vacuum at the impeller inlet. This vacuum causes the water to flow through an opening into the nozzle 45 and also creates a vacuum in the chamber 57 which is connected with the suction pipe 53 from the well and this vacuum draws the water, mixed with air, into the impeller 28; thence through the impeller into the chamber 14 where the water with air automatically flows to the top of that chamber and through the outlet 56 to a pressure tank or out to service, while the heavier water free from air is circulated to the bottom of 14 and through the opening 39 and passage 49 to the nozzle. The patent says this movement is continued till "all of the air is exhausted from the suction pipe * * *", and if air or gas again gets into the suction pipe, or elsewhere, the water with air or gas will be recirculated as before. It will be seen that the complete ejector assembly may be removed by removing the screws 42, and in the deep well service the ejector assembly is removed. In the deep well the pipe 58 is connected to the opening 39 in the pump discharge case and the pipe 59 connected to the opening 38. 58 is a pressure pipe and 59 a suction pipe. A jet and diffuser are placed in the well as shown in the diagram. The circulation of the water is largely like that in Mann. In 1944 plaintiff made changes in its pump, among other things adding a "wall or baffle" in the air separating chamber.

The Conery Patent No. 2,335,109, under which plaintiff manufactures its pump, is limited to the construction of two openings in the housing which surrounds the pump casing. Plaintiff is a licensee under Jacuzzi. It was admitted that Conery did not have air free water, and the defendant disclaimed any charge of infringement as to all claims that required in their wording that the Conery patent to be an infringement would have to cause substantially free water going down this pressure pipe.

There is a presumption that a patent is non-infringing, just as there is a presumption that a patent is valid. Since Conery Patent No. 2,335,109 was applied for and issued after Mann No. 507, there is a presumption that "there is a material and patentable difference between the structures of the patents." Knowles v. 138 West Forty-Second Street Corp., 2 Cir., 43 F.2d 929, 930. Kokomo Fence Mach. Co. v. Kitzelman, 189 U.S. 8, 23 S.Ct. 521, 47 L.Ed. 689; Eastman Kodak Co. v. McAuley, D.C., 2 F.R.D. 21; Automatic Toy Corp. v. Buddy "L" Mfg. Co., D.C.N.Y., 25 F.Supp. 520, affirmed 2 Cir., 97 F.2d 991. The Mann claims alleged to be infringed are, as heretofore stated, Nos. 6, 8, 9, 24, 25, 26 and 27 of No. 507 and claims Nos. 2 and 3 of No. 571.

A patent for a combination of parts is not infringed by the use of parts less than the whole, but it may be infringed if all of the parts are the equivalent in structure of the whole of the patent claimed to have been infringed. The defendant has disclaimed any charge of infringement as to any claim in Patent No. 109 containing a limitation or in result of obtaining air free water upon return of the water to the jet from the air separating chamber 14. One basis on which the defendant claims patentability is its means of returning substantially air free water from the separator to the jet. Admittedly Conery "has no practical means of separating air from water" and recirculated air continuously added itself to the new air being drawn into the system until there was sufficient accumulation to cause the pump to fail, notwithstanding and further obviously the Berkley (Conery) has no air separation chamber. Mann shows practically 100% of air separation. The Mann type air con-

trol volume orifice (91) could not be applied to it without failure.

Claim 6 of Mann No. 507 includes in combination "a chamber (14) at least a large part of which lies above the level of the pressure pump into which the pressure pump discharges, * * * the connection between said chamber and said tank being arranged so that liquid may be drawn off from the tank until the tank is substantially emptied without depleting the chamber of liquid."

▮▮▮▮ This claim is not infringed because the words "above the level of the pressure pump" mean above the uppermost surface or top of the pump parts. In the Myers so-called priming chamber, the line drawn tangent to the upper stationary vane surrounding the impeller is small and is small as compared with the amount of the air separator 14 above the periphery of the pump parts.

The part 14 in the Mann Patent No. 507 is more comparable to the priming chamber in Conery than the large air separating chamber in this Mann patent. Again, this so-called priming chamber does not separate the air like the chamber 14 in the Mann. Conery does not get air free water and this is due, in part at least, to the difference in these two chambers.

Plaintiff does not have a valve corresponding to Mann's valve 79. The drawings, specifications and claims of the Conery patent do not show any such valve. There is reference to an opening or outlet to the pressure pump, but this is not comparable.

Claim 8, among other elements, includes "a pressure chamber (14), * * * a jet pump located at a level below said pressure pump * * *, and means comprising an automatically operating valve in connection with said discharge pipe for preventing withdrawal of liquid from said chamber, said valve being arranged to close and prevent said withdrawal at a predetermined pressure below the lower limit of normal chamber pressure."

The air separating chamber is there called a "pressure chamber". Conery does not have either the position or the function of chamber 14. Conery does not have any automatically operated valve chamber. In Conery the valve is open and the chamber could not act as a pressure chamber.

Claim 9 includes, among other elements, "an air separating pressure chamber (14) into which said centrifugal pump discharges, * * *, a jet pump located at a level below said pressure pump * * *, an automatically operating pressure actuated valve controlled at least in part by the pressure in said chamber for preventing withdrawal of liquid from said chamber through said discharge pipe, said valve being arranged to close and prevent said withdrawal at a predetermined pressure below the upper pressure limit, * * *." This claim relates to a deep well pump. These elements are lacking in Conery. The Myers priming chamber has no equivalent to the valve in Mann's in its air separating chamber. Conery shows the water flowing directly into air chamber from the pump. Admittedly Myers does not get air free water. Chamber 14 in Conery does separate some air. Chamber 41 in Mann occupies the same relative position as does element 14 in Conery, since the pump opens directly into element 14.

Claim 24 includes an "air separating chamber being of substantial volume so as to materially decrease the velocity of the liquid flowing thereto and the effective inlet and the effective outlet being located remote from each other and with the inlet above the outlet so that liquid and air separation takes place in the chamber, the top of said chamber being located well above the level of the pressure pump, and a connection from substantially the top of said chamber to the pneumatic pressure tank through which the separated air, together with a portion of the liquid, flows to the pneumatic pressure tank." Myers priming chamber is small as compared with Mann's chamber. It does not serve the same purpose as Mann. It would seem that Mann intends a single opening at the top of pipe 56 in the chamber. That is all the opening he could use in his device. Myers shows an opening above the outlet and an

opening below the outlet of the jet. Myers does not have its priming chamber "well above the level of the pressure pump."

Claim 25 reads, in part, as follows: "A pumping system comprising, * * * air separating chamber (14) having an inlet connected to the pressure pump discharge and an outlet connected to the jet pump, said system having the parts thereof arranged so that air entering the system * * * continuously rises until it passes, * * * into the pneumatic tank from said chamber * * *." Conery shows two openings in the air separating chamber. Mann has only one opening and that is at the top of element 56 remote from the outlet to the jet. Conery shows a second inlet at the lower side of the vane plate below the outlet to the nozzle.

Claim 27 reads in part: "A pumping system comprising, * * * a chamber, (14) * * * the inlet connection to said chamber from the pressure pump emptying into the chamber a substantial distance above the outlet connection of the jet pump so that liquid and air separation may take place in the chamber with the air rising to the top of the chamber and passing from thence to the tank, the top of said chamber being located well above the level of the pressure pump so that air entering the system continuously rises through the system and passes to the pneumatic pressure tank." As has been pointed out Myers has two inlets to the air separating chamber.

Claim 2 of Mann No. 571 in part includes:

" * * * an air separating chamber associated with said casing * * * and a unit detachable with respect to said pump casing without disturbing the pump casing, * * *."

Claim 3 reads, in part: "A pumping system comprising, * * * an air separating chamber associated with said casing and said casing having at least one outlet for the discharge of liquid from said impeller into said air separating chamber, and a unit detachable with respect to said pump

casing without disturbing the pump casing, * * *."

The chamber 28 must be of a larger size than the chamber 14 in Conery, since substantially 100% of air is removed from the water. In the instance of Conery, there is a central housing outside of the pump casing. There is little air separation therein, and its main purpose is for priming the pump. In Mann the unit assembly casing, nozzle and diffuser are detachable from the flange extending from the pump casing. In Conery this unit is detachable from the housing which is outside of the pump casing. Mann Patent No. 507 was cited by the Patent Examiner, but the Conery patent issued.

▮▮▮ The Court holds with respect to the various claims in suit as follows:

As to Patent No. 507:

1. Allowed—Claims as respects air separating chamber: 1, 2, 3, 10, 11, 12, 13, 14, 16, 17, 18, 21, 22, 23, 28, 29 and 30.

2. Disallowed—Claims as respects conversion of system: 15, 16, 17, 18, 19, 20, 21, and 22.

3. Allowed—Claims as respects the pressure responsive switch: 2, 8, 9, and 10.

4. Allowed—Claims as respects air volume control: 3, 9, 13, 14, 23, 24, 25, 28, 29 and 30.

As to Patent No. 571: Claims 1, 2 and 3 are allowed. All other claims are disallowed.

▮▮▮ Counsel point the necessity of a careful scrutiny of the testimony of experts. Here, as is usual, there is an expert witness for each party. The Court must draw its own conclusion as respects the weight of the testimony of each.

This is not a case of a "shadow of a shade of an idea." The Mann Patents in suit are for a combination of elements by which a new and useful result was obtained in a new way.

Findings may be submitted if deemed necessary.