## CONNECTICUT PAPER PRODUCTS, Inc., v. NEW YORK PAPER CO.

### Civ. No. 871.

District Court, D. Maryland.
June 2, 1941.

Karl W. Flocks, of Washington, D. C., and Irvin Siegael, of Baltimore, Md., for plaintiff.

C. Paul Parker, Richard Russell Wolfe, and William Mercer Alexander (of Parker, Carlson, Pitzner & Hubbard), all of Chicago, Ill., and Frederick J. Singley, Jr., (of Hinkley, Burger & Singley), of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a patent suit involving three patents having related subject matter; that is to say, one patent is for a paper drinking cup (Ericson patent No. 1940406, issued December 19, 1933, upon application of June 30, 1932); one is for a metal device for dispensing such cups one at a time as required, from a nested stack of them (Emerson patent No. 2206838, issued July 2, 1940, upon application of April 15, 1940); and the third patent is for a design for a paper cup dispenser (design patent to the same W. J. Emerson No. 118578, issued January 16, 1940, upon application of November 4, 1939).

The plaintiff is a corporation of Connecticut owned and controlled largely by W. J. Emerson, the patentee of the dispenser and design patents in suit, and manufactures and sells paper cups at wholesale. The defendant, the New York Paper Company, is a Maryland corporation and is not a manufacturer of cups or dispensers, but is a small jobber obtaining its products from the Boston Drinking Cup Company, an affiliate of the Boston Envelope Company, of Dedham, Massachusetts.

The jurisdictional and venue requirements are satisfied. To the charge of infringement with respect to all three of the patents, the defendant asserts (1) that they are invalid by the prior art, and (2) that they are not infringed by the defendant. Also, with respect to the dispenser patent, there is the further claim that it is invalid because on sale more than two years before application for the patent was filed; and the claim of double patenting, on the ground that it covers nothing not disclosed in the design patent which was prior; and the still further defense is asserted against the design patent that its subject matter is not patentable as a design, since it covers features which are purely functional or utilitarian, rather than ornamental.

We will consider each of these patents separately, in the order in which they have been above referred to.

First, as to the Ericson patent, this embraces three claims, all of which are in suit. There is little substantial difference between them and therefore the third claim, which is the most detailed in its phraseology, may be taken as typical of all three. It is as follows: "A paper drinking

cup having a pair of opposed walls, one of said walls being formed by a pair of overlapping wings, each of which is provided with a flap at its lower edge, the other wall having an extension secured to its lower edge, said flaps and extension being of the same width as that of their respective walls, said overlapping wings providing a thickened triangular portion the base portion of which is substantially the same width as that of said walls, said flaps and extension being folded together in superimposed relation and secured to the base portion of said triangular portion to provide a closed bottom." The plaintiff is Ericson's assignee of this patent. We quote from the patent the following statements of the objects of Ericson's invention, as he gives them:

"This invention relates to paper drinking cups, and more specifically to the flat or envelope type of cup which is adapted to be stored in stacks in dispensing machines and to be withdrawn therefrom one by one in a flat condition.

"It is an object of the present invention to provide an improved cup of this character, one wall of which is provided with a substantially thickened triangular portion, the base of which is disposed adjacent the closed bottom of the cup and which gradually decreases in width towards the mouth of the cup. By means of such a structure, my improved cup may be readily opened by merely pressing the opposite side edges thereof.

"Another object of the present invention is to provide an improved cup of this character, the bottom portion of which will remain substantially flat while stored in the dispensing machine so that the cup may be easily taken therefrom.

"A further object of the present invention is to provide an improved cup of this character which is relatively simple in construction and hence may be cheaply and easily manufactured."

Shorn of technical language, it will be seen that Ericson's cup consists of nothing but a single sheet of paper cut and folded so as to produce, by sufficient overlapping of the sides and bottom of the sheet, which are glued together, a watertight container which may be stored flat in large quantities in a dispensing machine, and withdrawn therefrom, one by one, and opened by merely pressing the opposite side edges of the cup. It is self-evident that the

degree of flexibility of a cup of this character, that is to say, the amount of pressure needed to be exerted to open it, and to keep it open, varies with any change in the shape of the cup, with the amount of overlap of its edges, and the character, that is to say, the thickness of the paper used and the volume of the liquid put into it.

Addressing ourselves to the question of validity of the Ericson patent, it is to be noted that all the paper cups that have been put on the market during the past twenty-five years or more may be divided into four classes: (1) The wedge-shaped type, like the Ericson cup and the so-called Laurel, or defendant's cup, in suit; (2) the flat or envelope type, which are stored one upon the other and not nested; (3) the cone-shaped type, that is, having a pointed bottom, and (4) the tumbler type which simulates the common glass cup. Considering the art as a whole, there have been numerous patents issued. The defendant relies upon four, only one of which, however, we feel need be referred to, because in our opinion it clearly anticipates the Ericson patent. This is the patent to R. P. Dickerson, reissue No. 17553 dated January 7, 1930, on reissue application of January 19, 1929. We will, however, also analyze the much earlier patent to G. F. Hogan, No. 1021099, issued March 26, 1912, on application of April 22, 1911, as illustrative of the simple evolution in this art. It is significant that neither of these patents was cited to the Patent Office at the time the Ericson patent was under consideration there.

Hogan states that "the main object of my present invention is to provide a flat blank of paper or other suitable material so cut and scored that it may be folded up into a drinking cup." Hogan's single claim reads as follows: "A flat blank for a drinking cup, said blank consisting of stiff waterproof paper cut to sectoral form and having two radial scorings which divide said blank into three equal portions of uniform shape, said portions being so disposed that when either side portion is folded over the intermediate portion, the entire edge of said side portion will rest on the opposite scoring, said blank also having an embossed transverse score which extends in a straight line across all three portions of the unfolded blank adjacent to the lower corner of the sector, said transverse score being so positioned on the in-

termediate portion of the blank as to serve as a line for folding, and being so positioned on the side portions as to pucker said side portions when said blank is folded up squarely at its lower corner to form a cup."

It will thus be seen that Hogan's basic idea lay in the fact that his cup was folded into shape from a flat blank, by the user at the time of use, and that no adhesive was involved. He thus explains his device: "The scored blank above described may be regarded as the finished product, or article of manufacture, and is sold ordinarily in this flat and unfolded condition. To fold it into a cup, one of the side portions is folded over onto the central portion, with which it exactly corresponds in size and shape, and then the second side portion is folded over on the other two. It makes no difference which side portion is folded in first, since they are exactly alike. This is an important feature when the blanks are to be used by schoolchildren and others who could not economically be taught a complex folding operation. To complete the cup, it is only necessary to fold up the lower corner or apex 3, along the line 10."

The Dickerson patent issued eighteen years after the patent to Hogan. Dickerson thus describes his invention:

"In carrying out the invention, there is produced from a single sector-like paper blank a naturally-distended cup without folds or creases in its side walls, but the bottom of this cup instead of tapering uniformly to a sharp point, or apex, like the unfolded self-extended conical paper cups heretofore produced takes the form of a straight line or edge of considerable length, the same being produced by folding up several thicknesses of material at the narrowed end of the rolled blank; in other words, the bottom of my improved cup is formed similarly to the bottoms in the flat folded sector-shaped cups which have been heretofore produced. In consequence of this construction, the cup produced by my invention is easily handled since it does not require distending, as do the flat cups, and it is easily held at the bottom between the fingers without exhibiting any tendency to elevate itself when pressure is applied, as do the above described conical cups.

"The invention has for a further object a cup which may be conveniently stacked, as by nesting a plurality of cups; and which shall be of such shape, moreover, that dispensing of individual cups may readily be effected as by a suitable cup dispensing machine, in manner well understood. A still further object of the invention consists in the provision of a cup which will allow of forcing out the contents, such as fruit ices, etc., thru squeezing the body of the cup, or by rolling up the same from the bottom, the remaining portion of the cup meanwhile retaining generally its form."

A typical claim (No. 3) is as follows: "As a new article of manufacture, a paper drinking cup having its body portion in self-extended substantially rounded form, said body from its open mouth tapering in wedge-like form to a watertight bottom closure made by a straight edge transverse fold-up of the cup material secured to the body wall, the line of fold of said fold-up being of sufficient length to provide a base for resting the cup against a finger of the user, when held in filling position in his hand."

The obvious difference between the Hogan and the Dickerson device, which presumably the Patent Office thought sufficient to warrant the granting of a patent to Dickerson, lies in the fact that with Hogan the fan-shaped blank of paper is scored radially into three equal sections and these sections are scored transversely across their lower ends, so that the blank, sold in its flat, unfolded condition, may be folded up into a watertight cup by the individual user at the time of use, no adhesive being involved.

We are satisfied that Dickerson anticipates Ericson. We do not think that the plaintiff is necessarily restricted under the Ericson patent either to a cup whose construction conforms, without any deviation whatsoever, to the specifications and drawings of the Ericson patent, or to dispensing such cup exclusively from a flat position. The patent is for an article. The claims do not prescribe how the article shall be dispensed. The specifications indicate a method but do not, and cannot make that method exclusive. We find anticipation because the variations between what Dickerson evolved and what Ericson prescribes, when both patents are fairly interpreted, are relatively so slight that each is in effect an equivalent of the other. Indeed, we have only to compare the design and construction of plaintiff's cup with the drawings accompanying the Ericson patent, in order to obtain ample proof of the fact

that plaintiff itself, under the Ericson patent, has made as great a departure from the teachings of the patent as we find has been made by Ericson from the teachings of Dickerson, thus, taking an inconsistent position by saying in effect that whereas the Ericson patent is broad enough to permit of such changes, Dickerson is not. That is to say, Ericson's patent drawings and specifications describe a triangular overlap and specify that the base of the triangle is the full width of the bottom of the cup; whereas the Ericson cup model actually introduced in evidence does not have the edge of the overlapped side coming down and meeting the corresponding edge of the bottom overlap. Furthermore, the Ericson model has a folded down portion on one of the top edges, giving a double reinforced part that is not shown in the patent. Also, what is more important, the model is molded in an open position, and dispensed from nested stacked formation as is the Dickerson cup; whereas the Ericson patent stresses the adaptability of the cups to having a plurality of them "stored in a dispensing machine, one upon another, with the bottom of the lowermost cup of the stack exposed so that it may be grasped by the finger of the user and withdrawn from the dispensing machine in flattened condition," requiring pressure on the side edges to open it.

It is too well established to require citation of authorities that the object of the patent laws is to reward those who make some substantial discovery or invention which adds to the sum total of our knowledge and makes a step in the development of a given art. It was never the object of the patent laws to grant a monopoly for every trivial device, or for every shade or shadow of an idea which would naturally occur to any one skilled in the particular art. Such an indiscriminate creation of exclusive privileges would tend to discourage rather than stimulate invention. Applying this rule to the present case, we have no hesitancy in finding that the Ericson patent is invalid because anticipated by Dickerson, and it becomes unnecessary, therefore, to spend further time upon the question of validity.

It follows from what has just been said on the question of validity that, were the Ericson patent valid, we would be compelled to find that it was infringed by the defendant's cup, since the latter is virtually identical in form and construction with the Ericson cup. The fact that the overlapping of the so-called wings is triangular in Ericson, and more rounded in defendant's cup—the only difference in the entire construction—is too slight to be of any real consequence. Obviously the rigidity of the side of the cup will vary with the shape and extent of the overlap, but there is nothing novel about such variation.

We turn next to a consideration of Emerson patent No. 2206838, covering the metal dispenser. There are eight claims in this patent, but three, Nos. 1, 3 and 7, have been disclaimed by plaintiff so only five remain, of which No. 5 may be said to be typical, and which is as follows: "In a paper cup dispenser, a rear element, a front element, and a lid, said rear element comprising an elongated base and a pair of extending flanges therefrom, said front element being generally U-shaped in transverse section with the legs of the U being bulged or bellied substantially throughout their length, said rear element being hinged to the legs of said front element at their respective bottoms, said lid being hinged to said rear element and being dish-shaped with a circumferential depending flange corresponding to the shape of the horizontal section of the front element and rear element when in closed position, and cam means located within the front element whereby the bottom cup of a stack may be released from the remainder of the stack, said dispenser being open at its bottom for dispensing purposes." We will address ourselves first to the question of whether this patent is valid.

The character and objects of the Emerson device are thus stated at the beginning of the patent:

"This invention related to paper cup dispensing and more particularly to the dispensing of stacked paper cups one at a time as required.

"Prior to the instant invention paper cups have been dispensed from stack holders but oftentimes the user obtained two cups when only one was required and frequently the user had difficulty in detaching a single cup from the remainder of the stack. Other prior cup dispenser constructions are expensive and difficult to manufacture and require much attention and servicing in endeavor to keep the dispenser in operation.

"It is an object of the instant invention to provide a novel paper cup dispenser

132

which is simple to fabricate, inexpensive to manufacture, and which effects the dispensing of one cup at a time regularly without jamming the stacked cups.

"It is a further object of the instant invention to teach a novel method of dispensing paper cups one at a time from a stack."

It will thus be seen that what is claimed for this dispenser is that it is an inexpensive, simple device whereby paper cups stacked in nested position may be dispensed one at a time, regularly, without jamming. It has no springs or other movable parts which characterized previous inventions in this field. That is to say, it operates entirely by gravity. It consists of a lid which locks the front element to the rear element, both of which are hinged to facilitate loading, the front element being bellied on the inside to facilitate alignment, and there are V-shaped cams which extend into these bellies and effect proper dispensing of the cups. The lid arrangement permits of sanitary loading of the front element from the top, so that a stack of nested paper cups may be slipped from their paper carton into the front element without being handled.

We find that the basic elements of this device have not heretofore appeared in similar combination in any prior patent, or in any of the devices produced in evidence and shown to have been prior in use, since all contain, as already stated, either a spring, a shutter or some form of movable part, except in the case of the patent to W. E. Swift, No. 1915006, issued June 20, 1933, upon application filed October 19, 1929. However, the Swift patent, while containing no movable parts, nevertheless is devoid of cams, and instead, merely utilizes the back and front walls at the lower end of the container which are formed to fit the conformation of the cup as it is dropped down between them. This dispenser is the same as a product put out as early as 1929 by the United States Envelope Company, as a dispenser for its so-called Ajax drinking cups. The cams in the Emerson device are different from those found in any prior dispenser, including plaintiff's earlier model, and cause a snapping back of the stack of cups, as the lower one is withdrawn from the dispenser. This is not in fact duplicated in any of the other dispensers, and adds a certain degree of utility, slight though it

be, because it seems to afford release of each individual cup with more directness.

■ Thus, we are not prepared to say, as defendant would have us do, that in every substantial respect the combination of elements in the Emerson device finds its mechanical equivalent in the prior art patents. A new combination, if it produces new and useful results, is patentable though all of the constituents of the combination, as is true in the present case, were well known and in common use before the combination was made. The result, to be patentable must, of course, be a product of the combination and not a mere aggregate of several results, each the complete product of one of the combined elements. Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288.

The defense of double patenting, that is, the claim that the design patent, also in suit, which was issued to Emerson prior to the issuance of his dispenser patent, invalidates the latter, we will discuss later, when the design patent is taken up.

In addition to the claim of invalidity on the ground of anticipation by the prior art, defendant maintains that the Emerson dispenser patent is nevertheless invalid by virtue of the provisions of the patent law, 35 U.S.C.A. § 31, because, as is claimed, it was on sale more than two years before the filing date of the application.

The applicable part of the statute upon which defendant relies, 35 U.S.C.A. § 31, is as follows: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, * * * not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, *and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned,* may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor." (Italics inserted).

■ In 1939, the two year limitation in the statute just quoted was reduced to one

5 5

year, Act of August 5, 1939, c. 450, **sec. 1,** 53 Stat. 1212, but the amendment is not retroactive.

Public use or sale within the meaning of the statute must be conclusively shown to have occurred. Maibohm v. RCA Victor Co., 4 Cir., 89 F.2d 317. We are not satisfied that such is true in the present case, because the weight of the credible evidence indicates that whereas there were negotiations looking towards a sale of the Emerson dispenser to the Boston Drinking Cup Company as early as the latter part of February or the first part of March, 1938, that is, more than two years prior to the patent application, we do not believe that these negotiations are sufficient to establish that the dispenser was actually in public use or on sale at such time. It is true that an imperfect model of the Emerson dispenser was prepared by Mr. Emerson and shown to the sales manager of the Boston Drinking Cup Company prior to March 3, 1938, as a result of which, on that date, if not somewhat earlier, an agreement was reached whereby, after thirty days, the Emerson dispenser would be supplied to the Boston Drinking Cup Company in conformity with the demonstrated model, that company having, on March 3rd, ordered 15,000,000 Ericson cups from Mr. Emerson and it being understood that, according to common practice, these new dispensers were to be furnished with every order obtained by the Boston Drinking Cup Company for 5,000 of such cups. However, there is no evidence that any of these Emerson dispensers were actually delivered to the Boston Drinking Cup Company or to any of its customers, or that there were any sales orders taken for them, prior to July or August, 1938, or that any of them had, in fact, been fabricated prior to August, 1938. Mr. Emerson, who gave the impression of being a truthful witness, stated that none of the dispensers, completely finished and ready for delivery to customers, were received by him from his manufacturer until August 28th, 1938; and that all sales of these dispensers occurred between August 29, 1938, and a date about a year later, when he severed business relations with the Boston Drinking Cup Company. The sales manager of that Company, who was called to testify by the defendant, likewise, was not able to fix by documentary evidence or otherwise, any earlier date of actual sale.

An article for which a patent is sought and which is on hand, ready for delivery under contract of purchase, at a date prior to the two (now one) year period named in the statute, may be said to have then been "on sale", within the meaning of the statute. So it has been held. See Covert v. Covert, C.C., 106 F. 183; National Cash Register Co. v. American Cash-Register Co., 2 Cir., 178 F. 79; Wende v. Horine, 7 Cir., 225 F. 501. However, if the article is not on hand, ready for delivery, it cannot be said to be "on sale." Such was the situation in the present case. An agreement to sell, made prior to the statutory period, is not in itself sufficient to invoke the bar of the statute, if the goods were not in fact on hand prior to that period, and therefore could not have been delivered prior to that period. So it was held, and we think correctly, in Burke Electric Co. v. Independent Pneumatic Tool Co., 234 F. 93 (certiorari denied, 241 U.S. 682, 36 S.Ct. 728, 60 L.Ed. 1234), by the Circuit Court of Appeals for the Second Circuit, and the First Circuit Court of Appeals in McCreery Engineering Co. v. Massachusetts Fan Co., 195 F. 498. The precise point appears never to have been passed upon in this Circuit, although, inferentially, we interpret the decision in Maibohm v. RCA Victor Co., supra, to support the conclusion here reached.

We quote the following from the Burke Electric Co. case, supra, 234 F. 93: "The proofs in this case show that the patented motors were ordered two years and a few days before the application for the patent was filed, but were not delivered and could not have been delivered until a time within the two-year period. The question is as to the proper construction of the words 'not in public use or on sale' in Rev.St. § 4886 (Comp.St.1913, § 9430 [35 U.S.C.A. § 31]). The combination of the words indicates that the sale contemplated is such as creates an opportunity for present public use. It is a situation quite different from the reduction to practice necessary to sustain anticipation. * * * The provision ought to be construed favorably to patentees. If patented articles are on hand ready to be delivered to any purchaser, they are on sale, whether any of them has been sold or not. But, if they are not, they cannot be said to be on sale within the meaning of the act, though the inven-

tion itself has ceased to be experimental and is complete. This certainly should be true of articles which can be carried in stock, like the motors in question."

■ Turning now to the question of infringement, we find that defendant's dispenser does infringe the Emerson device because virtually identical with it. True, instead of two separate cams annexed to the front element, defendant uses one solid metal piece annexed also to the front element, extending across the dispenser, and its breadth is somewhat greater than the breadth of the separate Emerson cams, but these are differences which we think are too slight to be called a real distinction. If the back segments of the Emerson cams were extended in their present shape they would meet, and form one, triangular piece, virtually identical, except as to width, with defendant's single cam, The single cam is merely the common equivalent of the pair of cams. It performs, and was intended to perform precisely the same functions, although it does not do so quite as satisfactorily, since Emerson fashioned his cams more meticulously to fit the contour of the cup as it slides down and is released between them.

We come, finally, to the third or design patent to Emerson for a paper cup dispenser.

■ It is well settled that design patents should issue only upon ornamental or aesthetic features of a device, and cannot dominate functional or utilitarian features. That is to say, when a design differs from the prior art merely through the addition of some feature placed there for purely functional purposes, such design is not patentable. See Gorham Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731; Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 6 Cir., 67 F.2d 428; Majestic Electric Development Co. v. Westinghouse Electric & Mfg. Co., 9 Cir., 276 F. 676; Rose Manufacturing Co. v. Whitehouse Co., D.C., 201 F. 926. Applying this principle, we are satisfied that when the Emerson de-

sign patent is deprived of its functional features, there remain no ornamental features, and so we find this patent to be invalid. Thus, by striking down, as we must, the design patent, we are not faced with the question of double patenting and consequent invalidity of the Emerson dispenser patent. Because, where, as in the present case, the earlier design patent has not expired and anticipates the mechanical patent, the design patent should be held void and the mechanical patent valid, since the design as patented was not in fact ornamental, but functional, and therefore not the proper subject matter for a design patent. H. C. White Co. v. Morton Converse & Son Co., 2 Cir., 20 F.2d 311, certiorari denied, 275 U.S. 547, 48 S.Ct. 85, 72 L. Ed. 419. As was said in that case (20 F.2d page 313): "The whole vice of double patenting arises from the fact that the second patent defeats the dedication made in the first by extending the term of the original monopoly. Anything, therefore, which relieves the inventor of the first dedication, sets him free again to dedicate the disclosure, if not otherwise abandoned, and leaves it as a valid consideration for the second grant. Since the design patent had not expired at the time of the decree declaring it void, the inventor had not enjoyed his entire consideration, and the second grant was adequately supported by the disclosure."

We will add that because of their almost complete similarity, were the Emerson design patent to be upheld, defendant's dispenser, as now designed, would infringe it.

To summarize our conclusions: First, Ericson cup patent No. 1940406 is invalid, but were it valid, defendant's cup would be an infringement of it. Second, Emerson dispensing patent No. 2206838 is valid, and infringed by defendant's dispenser. Third, Emerson design patent No. 118578 is invalid, but were it valid, defendant's dispenser, as now designed, would be an infringement of it.

A decree will be signed in conformity with this opinion.