**MORPUL, INC., Appellant,**

v.

**GLEN RAVEN KNITTING MILL, INC., Appellee.**

**No. 10009.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 5, 1965.

Decided March 2, 1966.

Jack W. Floyd, Greensboro, N. C. (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellant.

Thomas B. Van Poole and Charles R. Fenwick, Washington, D. C. (Thornton H. Brooks and McLendon, Brim, Holderness & Brooks, Greensboro, N. C., and Mason, Fenwick & Lawrence, Washington, D. C., on brief), for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and MICHIE, District Judge.

PER CURIAM:

This is a patent infringement action brought by Morpul, Inc., against Glen Raven Knitting Mill, Inc. After reviewing the prior art, the specifications appended to the claim, and the file wrapper history of the patent, the District Court entered summary judgment for defendant, holding that plaintiff was estopped to claim infringement.

I

The plaintiff's patent was originally issued to Ernest G. Rice in 1956 as No. 2,826,760, and reissued with no substantive changes in 1958 as Reissue No. 25,-360. It describes a combination garment of ladies' seamless stockings and panty. After formation of foot, leg and welt portions in one operation, each stocking is slit longitudinally on the inside of the welt portion. The two individual stockings are then joined together along the edges of the slits to form the garment, with a central seam running from the rear to the front of the waist. After giving the specifications and diagrams for his invention, the patentee claimed:

"A combination panty and stocking formed from circular knit fabric comprising a pair of stockings of seamless knit construction having foot, leg and welt portions, said welt portions being knit of stretchable yarn and adapted to extend above the knee to the waist of the wearer, said welts each having a longitudinal slit intermediate the front and rear of the stocking, said first and second stockings being oriented to position the longitudinal slits adjacent each other and *a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam intermediate a single en-*

*larged welt and defining the panty."* (Emphasis added.)

The present controversy involves the scope of the phrase "U-shaped seam" in this claim.

The defendant concedes that its garment consists of seamless stockings, with foot, leg and welt portions, also slit on the inside and also joined together along the edges of the slits to form a combination panty and stockings. In joining the edges of the slits together, defendant has inserted between the individual stockings an additional diamond-shaped piece of fabric, denominated a crotch piece. Plaintiff argues that the phrase "U-shaped seam" encompasses within its meaning *any* method of joining individual stocking welts together by use of two rows of stitching. To this the defendant replies that the "seam" in the patent grant can be interpreted to include only a continuously contiguous U-shaped seam, and not a seam interrupted by a crotch piece.

## II

On this appeal, we undertake to adjudge only the question of infringement, as only this and not the validity issue was raised in the motion for summary judgment. Since the Rice patent is a combination of elements known in the art, plaintiff was required to show that every single element—or its equivalent—was embodied in the defendant's garment in order to show infringement. See Cimiotti Unhairing Co. v. American Fur Ref. Co., 198 U.S. 399, 25 S.Ct. 697, 49 L.Ed. 1100 (1905); Montgomery Ward & Co. v. Rogers, 100 F.2d 721, 722

(4th Cir. 1939). Thus, the sole question presented to the District Court on the motion for summary judgment was whether the addition of the crotch piece in the defendant's garment departed from the patent's prescription of a "seam." This in turn depends on the scope given that word in the grant of letters patent. In interpreting the claim of the patent, resort may properly be had to the prior state of the art,[1] the specifications[2] and, when related claims have been rejected by the Patent Office, to the file wrapper history.[3]

## III

Joining individual stockings together to form a garment to serve the combined purpose of stockings and panty was a familiar idea in the textile industry at the time of Rice's original application. The Goodman patent, No. 2,697,925, taught the joinder of full-fashioned stockings, containing foot, leg and welt portions, to form a single garment; and Appelton (British No. 15,835) taught the combination of seamless stockings by means of a seam extending from the rear of the waist to the bottom of a fly in the front. When Rice's original application was initially rejected on the basis of Goodman, he pointed out that his patent envisaged *seamless* stockings, rather than the full-fashioned garment of Goodman. The plaintiff argues that it was on this basis that the patent was subsequently granted.[4] It is notable, however, that the Appelton patent, which taught seamless stockings slit longitudinally and joined together in a combination garment, was not then before the examiner. Nev-

1. See Brown v. Piper, 91 U.S. 37, 23 L. Ed. 200 (1875); Turini v. Allens Mfg. Co., 198 F.2d 491 (1st Cir. 1952), cert. denied, 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350 (1952).

2. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940), rehearing denied, 312 U.S. 714, 61 S.Ct. 727, 85 L.Ed. 1144 (1941); Power Curbers, Inc. v. E. D. Etnyre & Co., 298 F.2d 484 (4th Cir. 1962).

3. See Smith v. Florence-Mayo Nuway Co., 182 F.2d 507 (4th Cir.), cert. denied, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950); Smith v. General Foundry Mach.

Co., 174 F.2d 147 (4th Cir.), cert. denied, 338 U.S. 869, 70 S.Ct. 144, 94 L.Ed. 533 (1949); Keith v. Charles E. Hires Co., 116 F.2d 46, 48 (2d Cir. 1940) (investigating file wrapper of reissue applications).

4. Plaintiff's brief states the matter in the following language:

"[T]he seamless machine can knit only a tube; it is incapable of automatically producing a stocking blank with the separated selvages revealed in the Goodman patent. Therefore Mr. Rice was required to *slit* his seamless stockings after they had been knitted in or-

ertheless, for present purposes, we may assume the validity of the patent.

As originally granted, the Rice claim contained an insubstantial typographical error. In 1958 his application for reissuance of a corrected patent was allowed, on the basis of the original grant. At the same time, Rice presented four additional claims (hereinafter referred to as reissue claims 2–5), each of which claimed "means" binding the slits of the stockings together, a much broader claim than the specific "seam" described in reissue claim 1. These additional claims were rejected by the examiner, primarily on the basis of Goodman, and Appelton, which the examiner also had before him at this stage. Rice attempted to distinguish Appelton on the ground that it had a fly front, but the examiner found that under Goodman, the use of stretch nylon and the general idea of joining stocking legs by a *U-shaped seam* was old in the art. The examiner specifically gave as a ground for rejection of reissue claim 5 that the broad term "means" might be improperly read to include the crotch piece already disclosed by Goodman.

Reissue claim 1, which had previously been allowed, was distinguished from the broader rejected claims on the ground that it was *limited* to "a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam." In view of the rejection by the Patent Office of any "means" which might include either the Goodman or Appelton features, the only consistent interpretation that can be given to reissue claim 1 is that it was restricted to a single application of the generally known idea of a U-shaped seam—a seam which was continuously contiguous from beginning to end.

The language in the specifications on which the plaintiff relies likewise fails to support his broad interpretation of the word "seam." To the contrary, Rice stated that the medial portion of the seam "formulated a crotch *area* of the panty above the welt line." (Emphasis added.) This can mean only that the seam defined a crotch area. Our interpretation is fortified in the following sentence, where the claimant says that "a reinforced panel may be sewn *to* the crotch area" (emphasis added), implying only that an additional piece of fabric might be sewn *over* the original crotch area. And in the elaborate diagrams submitted to the Patent Office in support of the claim, the seam is at all times portrayed as a continuous one; there is no suggestion that it may be interrupted by interposing a crotch piece.

■■ Finally, it is to be noted that the patentee understood the very narrow limits of his original and reissue claim 1. In the affidavit he submitted in support of his reissue claims 2 through 5, Rice stated that an examination of the original claim indicated

> "that the limitation of a U-shaped seam to form a single enlarged welt is unduly restrictive"

and

> "[t]hat he [Rice] was under the impression that as long as a single U-shaped seam appeared in the claim it is ambiguous in that *it may be interpreted as excluding more than one single seam either at the front or the rear of the garment.*" (Emphasis added.)

However, this effort to achieve a broad inclusion under the critical term "seam" is precisely what the Patent Office rejected. The patentee having acquiesced in this determination, plaintiff cannot now argue for a reading of the claim which would include a feature specifically

---

der to connect them. This feature was not shown in Goodman.

"Thus the surprising and novel feature of the Rice invention was the fact that Rice produced a garment comprised of *seamless* stockings that was capable of receiving the hips and buttocks of a wearer. In 1956 when Mr. Rice filed his application it was well known that the full-fashioned machine possessed such a capability. When Mr. Rice's attorney explained this distinction to the Examiner he permitted the patent to issue, restricted as it was to seamless as opposed to full-fashioned tights."

removed from coverage by the Patent Office. See Keith v. Charles E. Hires Co., 116 F.2d 46, 47–48 (2d Cir. 1940) (L. Hand, J.). We agree with Judge Gordon's well-reasoned conclusion that there could be no question as to the narrow scope of the word "seam," as used by the Patent Office in granting the Rice patent.

 Plaintiff offered to show that workmen skilled in the art considered the term broad enough to cover the defendant's crotch piece, but since the Patent Office made it plain that this was not to be included in the monopoly granted to Rice, such testimony could not raise any genuine issue of fact. Thus, while recognizing the rule that summary judgment should be employed with great caution in patent cases, we approve its use here where no expertise was needed to understand the art involved. The meaning of the disputed term is made so incontrovertibly clear in the file wrapper history that no genuine issue of fact exists. See Smith v. General Foundry Mach. Co., 174 F.2d 147 (4th Cir.), cert. denied, 338 U.S. 869, 70 S.Ct. 144 (1949); Inglett & Co. v. Everglades Fertilizer Co., 255 F.2d 342 (5th Cir. 1958); Frederick Hart & Co. v. Recordograph Corp., 169 F.2d 580 (3d Cir. 1948).

Affirmed.