**Elayne JONES, Plaintiff,**

v.

**MUSICIANS UNION OF SAN FRANCISCO, LOCAL # 6, AMERICAN FEDERATION OF MUSICIANS, et al., Defendants.**

**No. C–76–1765 RFP.**

United States District Court,
N. D. California.

Nov. 30, 1977.

Michael Kennedy, San Francisco, Cal., for plaintiff Elayne Jones.

Peter Nussbaum, Neyhart & Anderson, San Francisco, Cal., for defendant Musicians Union of San Francisco, Local # 6.

Chris A. Tarkington, Russ, Tarkington & Daniels, San Francisco, Cal., for defendant San Francisco Symphony.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

This case is before the court on the defendants' motion for summary judgment. In connection with the motion, a large number of affidavits have been filed by both sides, and the deposition of Maestro Seiji Ozawa was taken on September 19, 1977. On the basis of this evidence and for the reasons which follow, we must grant summary judgment for the defendants.

The plaintiff, Elayne Jones, was hired in 1972 as tympanist for the San Francisco Symphony for a two-year probationary period. Near the end of this period, on May 13, 1974, the defendant Orchestra Players' Committee, composed of orchestra members, voted not to offer Ms. Jones a tenured position with the Symphony. In this vote, she received just 177 of the 351 points required for tenure. At the time, this was the lowest point total ever given to a candidate for tenure since the voting system was initiated in 1972. Maestro Ozawa, whose approval also would have been necessary for Ms. Jones to obtain tenure, did not commit himself either way at that time. Following this vote, Ms. Jones filed suit in this district, alleging the outcome resulted from discrimination against her because of her race and sex. *Jones v. Musicians Union, Local # 6*, Civil No. C–74–1306 SW. That suit was settled in August, 1975, by a Settlement Agreement that provided for the holding of a second vote on Ms. Jones' tenure. Under the agreement, she was to be given tenure only if she was given at least 351 points in the second Players' Committee vote *and* Maestro Ozawa also voted in her favor. The second vote was held on August 25, 1975, under the supervision of a court-appointed monitor. The Orchestra Players' Committee, with five new members on the seven-person committee, this time gave Ms. Jones 169 points, again far short of the requisite 351. Maestro Ozawa, voting simultaneously but separately, also voted not to grant Ms. Jones tenure. In this, her second suit, Ms. Jones alleges that the second Players' Committee vote violated the express requirement of the Settlement Agreement that the committee's vote be based solely upon her musical ability and performance. Maestro Ozawa's vote is not directly challenged as being in any way improper.

For Ms. Jones to prevail in this action, she must demonstrate by a preponderance of the evidence not only that the committee's vote violated the Settlement Agreement, but that this violation resulted in some damage to her. *United States v. Mt. Vernon Milling Co.*, 345 F.2d 404, 405–06 (7th Cir. 1965). If Maestro Ozawa's vote against granting Elayne Jones tenure was independent and not improper, then that vote alone was entirely sufficient to prevent Ms. Jones from obtaining tenure. In that case, the committee's vote would be irrelevant, for the alleged harm, a wrongful denial of tenure, would not have occurred.

Although she does not directly challenge the basis of the Maestro's vote, Ms. Jones seeks to avoid the conclusion that the committee's vote caused her no harm by attacking the independence of his vote. It is her contention that Maestro Ozawa, in order to avoid exacerbating political difficulties he was having with the orchestra members at the time, voted against her because he knew from the preliminary discussion that the committee was going to vote against her. In other words, he simply decided that political expediency dictated not making a fuss, and thus the committee's vote in effect determined his vote as well. The court assumes, without deciding, that if Ms. Jones were able to prove that Maestro Ozawa's vote was not independent but in effect was determined by the committee, then she would be entitled to relief if she

could also show that the committee voted against her on grounds other than musical ability and performance. For our present purposes, this assumption means that summary judgment is inappropriate at this time if there is a genuine issue as to whether Maestro Ozawa's vote was really independent.

In support of their motion for summary judgment, the defendants rely primarily upon the deposition of Seiji Ozawa, taken in Boston on September 19, 1977. At his deposition, Maestro Ozawa was examined by the plaintiff's counsel for nearly two hours. Plaintiff's counsel clearly indicated at the outset of the deposition that he was fully aware of the critical facts for purposes of deciding this motion: "[W]hat I am primarily wanting to focus on this afternoon is the Maestro's state of mind vis-a-vis the musical abilities of Elayne Jones as he enters the room on the [25th] day of August." [1] The testimony given by Maestro Ozawa at the deposition fully supports the defendants' position, and does not serve as the basis for any inferences in any way favorable to Ms. Jones' theory that Ozawa's vote was motivated by internal political considerations. By contrast, Maestro Ozawa states quite clearly that his mind was made up to vote against Elayne Jones' tenure before the meeting of August 25 began.[2] Furthermore, he states that he reached this conclusion on the basis of his working with Ms. Jones and listening to her musical performance over the previous 15 months. He notes in particular one of her performances during the summer of 1974 where he felt that "the playing level was quite low, the musical level was quite low."[3] Overall, he states that her performance throughout the 1974–75 season was generally below the level of the orchestra as a whole.[4]

■ Maestro Ozawa does not have any personal or professional interest in these proceedings. In fact, as he has since departed the San Francisco Symphony, it is hard to imagine any reason why he still might be reluctant to admit of any political problems he might have had with the members of that orchestra. Nor has the plaintiff suggested any specific bases for questioning his credibility in any way. "[T]he [opposing party] cannot be permitted to go to trial just on the hope that in the more formal atmosphere of the courtroom the witnesses will revise their testimony or that a clever trial tactic will produce helpful evidence." *Spalding, Division of Questor Corp. v. Antonious*, 68 F.R.D. 222, 229 (D.Md.1975). *Accord, Lundeen v. Cordner*, 354 F.2d 401, 408–09 (8th Cir. 1966). Furthermore, since both parties already have had the opportunity to examine Maestro Ozawa, all that a trial will add would be to permit the demeanor of the witness to be directly observed. Demeanor evidence alone, however, no matter how telling, would still be insufficient to stave off a directed verdict for the defendants. *Wessel v. Buhler*, 437 F.2d 279, 282–83 (9th Cir. 1971); *Dyer v. McDougall*, 201 F.2d 265 (2d Cir. 1952). Thus, we are convinced that the defendants have met fully their burden of demonstrating the existence of every fact needed to prevail on this motion. What remains is to see if the plaintiff can satisfactorily show that there is a genuine dispute as to any of these facts. Fed.R.Civ.P. 56(e).

■ To defeat this motion then, Ms. Jones must set forth specific facts that create some measure of doubt as to the motivation of Maestro Ozawa in voting against her. To this end, Ms. Jones offers her affidavit in reply to the deposition of Maestro Ozawa. In this affidavit, Ms. Jones specifically alleges that she received only favorable reviews and comments about her playing during the 1974–75 season when Maestro Ozawa stated her playing was bad. Presuming these statements are all true, this does not give rise to any inference that Ozawa's vote was motivated by other than artistic reasons. The artistic judgment of

1. Deposition of Seiji Ozawa, at 9.

2. Deposition of Seiji Ozawa, at 12.

3. Deposition of Seiji Ozawa, at 23.

4. Deposition of Seiji Ozawa, at 23.

musical ability and performance is very highly subjective. Favorable comments from others do not in any way suggest that Maestro Ozawa's own artistic judgment of Ms. Jones' playing was similarly favorable. Ms. Jones also alleges in her affidavit that Maestro Ozawa's vote against her was part of a pattern of decisions based on artistic judgments followed by reversals when faced with orchestra opposition. But the specific instances she sets forth are different in kind from Maestro Ozawa's alleged reversal in her case. All of the instances mentioned involved the Maestro backing down from an attempt to "reseat," in essence demote, a player when faced with orchestra opposition. Furthermore, there is little to indicate any sort of reversal by the Maestro at all in Ms. Jones case, for there is scant evidence that he ever previously had a positive opinion of her playing. Even stretching as far as possible to give Ms. Jones the benefit of all reasonable doubts and inferences, we must conclude that her affidavit is legally insufficient to create a genuine issue of fact as to the motivation of Maestro Ozawa in voting against the plaintiff.

In determining whether there is a genuine issue of fact in this case, the court has been guided by the principle that summary judgment must be denied unless "it is quite clear what the truth is." *Sartor v. Arkansas National Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967, 972 (1944). *Accord, Poller v. Columbia Broadcasting System*, 368 U.S. 464, 468, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, 461 (1962); *Quadra v. Superior Court of San Francisco*, 378 F.Supp. 605, 624 (N.D.Cal.1974). However, the court concludes in the present case that it is entirely clear from the affidavits submitted and the transcript of Maestro Ozawa's deposition that his vote against granting tenure to Elayne Jones was completely independent and not determined by the anticipated vote of the Players' Committee.

Of course, nothing in this opinion is to be construed as a judgment or conclusion by the court as to the professional competence of Ms. Jones. We decide here only that

there is no genuine issue as to Maestro Ozawa's motivation in voting against Ms. Jones.

One final point must be mentioned with regard to this motion. Ms. Jones' complaint alleges as her Fourth Cause of Action the intentional infliction of emotional distress. Her theory here is that the Players' Committee vote against her was an intentional wrongful act that caused her emotional distress and anguish. With regard to this cause of action, the court concludes that the simple vote of the committee, even if it occurred exactly as alleged in the plaintiff's complaint, did not amount to the kind of outrageous conduct beyond all bounds of decency that is required for this tort. B. Witkin, 4 *Summary of Calif. Law* 2515 (1974); Restatement (Second) of Torts, § 46 (1965).

Therefore, it is hereby ordered that summary judgment for the defendants is granted; defendants to prepare a suitable form of judgment. Fed.R.Civ.P. 58.

SO ORDERED.